**Roxanne GREIL, Plaintiff,**

v.

**GEICO, Geico General Insurance Company and Jenetha Holt, Defendants.**

**No. CIV.3:01–CV–0352–H.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 16, 2002.

---

Bobbi Reilly, Attorney at Law, Claudia M. Cano, Attorney at Law, Heygood, Orr & Reyes, Dallas, TX, for plaintiff.

Robert D. Allen, Attorney at Law, Abel Leal, Attorney at Law, Baker & McKenzie, Dallas, TX, for defendants.

Kenneth J. Mighell, Cowles & Thompson, Dallas, TX, pro se.

### MEMORANDUM OPINION AND ORDER

SANDERS, Senior District Judge.

Before the Court is Defendants' Motion for Partial Summary Judgment, filed Sep-

tember 10, 2001, Plaintiff's Response in Opposition, filed October 15, 2001, and Defendants' Reply, filed October 25, 2001.

## I. BACKGROUND

On February 19, 1997, Plaintiff Roxanne Greil was involved in an automobile accident with Stacy Howard. At the time of her accident, Greil had an Uninsured–Underinsured ("UIM") automobile insurance policy with Geico. It is this accident and Greil's policy with Geico that give rise to the present suit. In addition to the February accident, the record indicates that Greil was also involved in an automobile accident on September 12, 1997. Defendants' uncontested summary judgment evidence indicates that Greil was involved in a third automobile accident on January 31, 1998. Greil sustained injuries, particularly to the neck and back, in both the February and September accidents. However, the record is silent as to any injuries resulting from the January accident.

In February 1999, Greil filed suit against Howard for injuries sustained in the February accident; she settled her claim for Howard's policy limit of $25,000. In approximately October 1999, Geico became aware that Greil would be filing a claim under her UIM policy for the February accident. Greil's claim was assigned to Ms. Jenetha Holt, a claims adjuster. Greil began forwarding her medical records to Geico in November 1999, and the parties agree that Geico received all of Greil's records by August 22, 2000. Greil claimed $42,085.19 in medical expenses related to the February accident. During her investigation, however, Holt discovered that Greil had been involved in at least two accidents after the February accident, namely the September 1997 and January 1998 accidents. The medical records submitted by Greil referenced treatment for the September accident. However, Greil had not allocated her injuries amongst the three accidents. After evaluating Greil's claim, Holt determined that approximately $23,000 of Greil's medical expenses related to the February accident. After considering Greil's future damages, Holt valued Greil's total claim at $67,500. Holt took offsets of $25,000 for the amount Greil received from Howard's insurance and of $2,500 for personal injury protection benefits previously awarded to Greil. Holt then offered a $40,000 settlement to Greil via her attorneys. It should be noted that Holt received up to $60,000 in settlement authority from Geico prior to making this offer.

Greil rejected Geico's settlement offer, and Greil's counsel informed Geico that Greil "vehemently" disagreed with the valuation of her claim. However, Greil insisted that Geico tender its $40,000 offer without requiring Greil to sign a release. Greil also demanded that Geico "breakdown" the valuation of her claim in writing. Holt twice offered to discuss Greil's claim over the telephone, yet Greil did not respond to these offers. Holt then offered to have a conference in the office of Greil's attorneys, but Greil did not respond. Finally, Holt offered to pay for a mediator to discuss Greil's claim, but, again, Greil did not respond.

Greil subsequently filed suit in the 134th District Court of Dallas County, Texas, asserting six causes of action: (1) breach of contract; (2) breach of the common law duty of good faith and fair dealing; (3) two violations of TEX. INS. CODE ANN. art. 21.21; (4) violations of TEX. INS. CODE ANN. art. 21.55; and (5) violations of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). As the parties are diverse and the amount in controversy exceeds $75,000, defendants removed the case to this Court. *See* 28 U.S.C. § 1332(a). Following removal, the parties settled the breach of contract and Article 21.55 claims. *See* Mediator's Report, filed

September 28, 2001. Geico moves for summary judgment on the remaining claims, and that motion is now ripe for disposition. As Greil's claims arise under state law, Texas law governs her substantive claims. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *See* FED. R. CIV. P. 56; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Innovative Database Sys. v. Morales*, 990 F.2d 217 (5th Cir.1993). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir.1998) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

If the movant meets its burden, the nonmovant must go beyond the pleadings and designate specific facts showing that a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir.1998). A party opposing summary judgment may not rest on mere conclusory allegations or denials in its pleadings unsupported by specific facts presented in affidavits opposing the motion for summary judgment. *See* FED. R. CIV. P. 56(e); *Lujan*, 497 U.S. at 888, 110 S.Ct. 3177; *Hightower v. Texas Hosp. Assn.*, 65 F.3d 443, 447 (5th Cir.1995). In determining whether genuine issues of fact exist, "[f]actual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625; *see also Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, in the absence of any proof, the Court will not assume that the nonmoving party could or would prove the necessary facts. *See Lynch*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir.1991).

With these summary judgment standards in mind, the Court turns to the defendants' summary judgment motion.

## III. EVIDENTIARY OBJECTIONS

█ Prior to reaching the merits of the summary judgment motion, the Court must first resolve the parties' pending objections to summary judgment evidence. Defendants object to Greil's submission of the parties' mediation settlement agreement relating to the contract and Article 21.55 claims as evidence in opposition to summary judgment. This District's *Civil Justice Expense and Delay Reduction Plan* makes all ADR disclosures confidential. The mediation settlement agreement would also be inadmissible at trial under FED. R. EVID. 408. Therefore, after due consideration, the Court finds that defendants' motion to strike should be, and is, GRANTED. The Court hereby STRIKES the mediation settlement agree-

ment from the summary judgment record, and all references to its contents contained in Greil's brief in opposition to summary judgment will be disregarded.

Defendants also object to portions of Roxanne Greil's affidavit, included in her appendix at Tab 10, on the grounds that it contains inadmissible hearsay. The Court agrees. The affidavit also contains references to the previously excluded mediation settlement agreement. After reviewing the remaining portions of the affidavit, the Court finds the statements contained therein to be irrelevant to merits of this case. Accordingly, the Court STRIKES the Greil affidavit in its entirety.

Plaintiff objects to the inclusion of Dr. Mark A. Doyne's report as summary judgment evidence, included in Geico's appendix at pages 87–92, on hearsay grounds. After due consideration, Greil's objection is SUSTAINED. Accordingly, for purposes of summary judgment, the Court STRIKES Dr. Doyne's report in its entirety.

## IV. BAD FAITH CLAIMS

■ Plaintiff alleges bad faith under the common law and TEX. INS. CODE ANN. art. 21.21 § 4(10)(a)(ii). The elements of both claims are identical. *See Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55–56 (Tex.1997). In order to demonstrate bad faith, Greil must prove that Geico had no reasonable basis for denying her claim or delaying payment when Geico's liability was reasonably clear, and that Geico knew or should have known that fact. *See id.* at 50–51, 55–56. A bona fide dispute as to the extent of coverage under the insurance policy does not amount to bad faith. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex.1994). Geico argues that Greil has presented no evidence of bad faith, or alternatively, that Greil's evidence demonstrates that the parties had a bona fide dispute as to coverage.

The Court begins by noting that there is no dispute in the evidence or in the parties' argument that Greil's injuries from the February accident are covered by her UIM policy. The parties do dispute, however, whether Geico had a reasonable basis for delaying payment on Greil's claim. Plaintiff also disputes Geico's valuation of her claim. After examining Greil's summary judgment brief and her supporting evidence, it appears that Greil argues the following three facts demonstrate Geico's bad faith: (1) as Geico gave Holt settlement authority of up to $60,000, Geico was obligated to offer Greil that amount instead of $40,000; (2) requiring Greil to sign a release before paying the "undisputed" $40,000 portion of her claim amounts to bad faith; and (3) Greil's filing of this lawsuit, alone, is evidence of Geico's bad faith. This final argument lacks any support in law and is summarily dismissed without further discussion. As for Greil's two remaining arguments, each will be discussed in turn.

■ Greil, argues that since Holt had settlement authority of up to $60,000, Greil's claim was valued at $60,000. Thus, Greil argues, when Geico offered $40,000, after valuing her claim at $60,000, Geico acted in bad faith. After considering this argument, the Court finds that it lacks merit. Holt's affidavit states that she valued Greil's claim at $67,500;. she then took the appropriate off-sets before offering Greil a settlement of $40,000. *See* Defendant's Appendix ("Def.App."), at 6–7. Aside from Greil's repeated references to Holt's claim log stating her settlement authority of $60,000, Greil has presented no evidence that Geico ever valued her claim at an amount other than $67,500. Greil's argument that Holt's settlement authority equates to Geico's actual valuation of her claim is unfounded. Numerous factors other than the actual value of the claim,

including the desire to avoid a trial, go into calculating a settlement amount. Accordingly, the Court finds that Geico's settlement offer of $40,000, when Holt had the authority to settle at a maximum of $60,000, is not evidence of bad faith.

■ Greil next argues that Geico's failure to tender the "undisputed" $40,000 settlement offer equates to bad faith. To this end, Greil argues that Geico's failure to tender the settlement offer without a release is also evidence of bad faith. First, the Court notes that plaintiff has presented no evidence that Geico's $40,000 settlement offer was undisputed. The record indicates that Holt notified Greil of the $40,000 settlement offer by a letter dated August 25, 2000. *See* Plaintiff's Appendix ("Pl.App."), at 6. Greil's counsel informed Holt that Greil "vehemently" disagreed with Geico's evaluation by a letter dated September 27, 2000. *See id.* at 8–9. While Greil demanded payment of the $40,000 settlement offer in her September 27 letter, she simultaneously stated her disagreement with Geico's evaluation of her claim. It is clear from the correspondence between Holt and Greil that Geico's evaluation of Greil's claim was disputed from the outset. *See id.* at 6–22. Given the disputed nature of Greil's claim, it is reasonable that Geico would demand a release prior to paying the settlement. Greil cites no authority that would prevent Geico from requiring a release under these circumstances. Accordingly, the Court finds that Greil has presented no evidence that Geico's $40,000 settlement offer represented an undisputed claim, nor has Greil presented evidence that Geico's failure to tender its $40,000 settlement offer, without a release, amounts to bad faith.

After reviewing the record and arguments before the Court, Greil has presented no evidence that Geico knew or should have known that there was not a reasonable basis for delaying payment of her claim. The record clearly indicates that Greil disputed Geico's evaluation of her claim. As previously stated, bona fide disputes as to the extent of coverage do not amount to bad faith. *See Moriel*, 879 S.W.2d at 17. Geico has presented uncontested evidence that Greil was in at least three auto accidents, and suffered injury from at least two of them. Geico has also presented evidence that it sought to determine which of Greil's injuries were attributable to each accident. Again, Greil has not provided contradictory evidence. In fact, Greil's evidence is largely silent as to the other accidents, and her brief in opposition to summary judgment is totally silent on this issue. Greil's evidence, at best, demonstrates a bona fide dispute between Greil and Geico as to the extent of coverage under her UIM policy. As a matter of law, this coverage dispute cannot amount to bad faith. *See id.* Accordingly, Geico's motion for summary judgment on Greil's common law and statutory bad faith claims is GRANTED.

## V. OTHER CLAIMS

■ Greil alleges that Geico violated TEX. INS. CODE ANN. art. 21.21 § 4(10)(a)(iv) by refusing to provide a written "breakdown" of its settlement offer. However, Greil fails to cite to any authority imposing such a requirement. The statute prohibits the "fail[ure] to provide promptly to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's...offer of a compromise settlement[ ]." TEX. INS. CODE ANN. art. 21.21 § 4(10)(a)(iv) (Vernon 2001). The record indicates that Holt offered to discuss Greil's claim on October 5 and October 23, 2000. *See* Pl.App. at 10, 13. The Court notes that Geico's October 5 letter follows approximately one week after Greil's letter informing Geico she disputed the valuation of her claim. *See id.* at 8–9. The record also indicates that Greil did not respond to

either offer to discuss her claim. *See id.* at 11–12, 14–15. On November 15, 2000, Holt suggested a conference to discuss Greil's claim, either by telephone or in person at the office of Greil's attorney. *See id.* at 16. Again, Greil did not respond to Geico's offer. *See id.* at 17–18. Holt reiterated her offer of a conference on November 27, 2000. *See id.* at 19. Again, Greil did not respond. *See id.* at 20–21. Finally, on December 28, 2000, Holt offered mediation, at Geico's expense, as an alternative to a conference. *See id.* at 22. Parties' arguments indicate that mediation of Greil's claim did not occur at that time. The record indicates that Geico repeatedly offered to discuss Greil's claim beginning approximately one week after she notified Geico that she disputed her claim valuation. Greil has cited no authority, nor any evidence, indicating that Geico's actions were insufficient under the statute. As such, the Court finds that Greil has presented no evidence that Geico's failure to "breakdown" the settlement offer in writing violated TEX. INS. CODE ANN. art. 21.21 § 4(10)(a)(iv). Geico's motion for summary judgment on this claim is GRANTED.

Greil's only remaining claim arises under the DTPA. Greil's DTPA claim is predicated on her bad faith claims under the common law and the Insurance Code. *See* Plaintiff's Original Petition (now Plaintiff's Original Complaint), filed February 22, 2001; Plaintiff's Response in Opposition to Summary Judgment, at 24–25. Since the Court has found that Greil's bad faith claims lack merit, there can be no merit to her DTPA claim. *See Douglas v. State Farm Lloyds,* 37 F.Supp.2d 532, 544 (S.D.Tex.1999). Accordingly, Geico's motion for summary judgment on Greil's DTPA claim is GRANTED.

## VI. CONCLUSION

The Court **STRIKES** the mediation settlement agreement and the Greil affidavit from plaintiff's summary judgment evidence. The Court also **STRIKES** Dr. Mark A. Doyne's report from defendants' summary judgment evidence. Geico's motion for summary judgment on Greil's common law, TEX. INS. CODE ANN. art. 21.21, and DTPA claims is **GRANTED**. Judgment will be entered accordingly.

**THE CLERK IS DIRECTED TO IMMEDIATELY FAX THIS MEMORANDUM OPINION AND ORDER TO COUNSEL.**

SO ORDERED.

### *JUDGMENT*

This Judgment is entered pursuant to the Court's Memorandum Opinion and Order, dated January 16, 2002, granting Defendants' Motion for Partial Summary Judgment.

IT IS ORDERED, ADJUDGED, and DECREED by the Court that Plaintiff take nothing by this suit against Defendants and that her claims be, and are hereby, **DISMISSED** on the merits, with costs taxed to the plaintiff.